Jeanette E. McPherson, Esq., NV Bar No. 5423
Schwartzer & McPherson Law Firm
2850 South Jones Blvd., Suite 1
Las Vegas, Nevada 89146-5308
Telephone: (702) 228-7590
Facsimile: (702) 892-0122
E-Mail: bkfilings@s-mlaw.com
*Attorneys for Shelley D. Krohn, Trustee*

SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

**UNITED STATES BANKRUPTCY COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| In re:<br><br>ALESSI & KOENIG, LLC,<br><br>Debtor. | Case No. BK-S-16-16593-ABL<br><br>Chapter 7<br><br>Adv. No. 18-01129-ABL |
| SHELLEY D. KROHN, TRUSTEE,<br><br>Plaintiff,<br><br>v.<br><br>DAVID ALESSI, AMERICAN EXPRESS COMPANY; AMERICAN EXPRESS NATIONAL BANK successor by merger to AMERICAN EXPRESS BANK, FSB; HOA LAWYERS GROUP, LLC,<br><br>Defendants. | **MOTION FOR APPROVAL OF SETTLEMENT AGREEMENT**<br><br>Hearing Date: November 24, 2020<br>Hearing Time: 10:00 a.m. |

Shelley D. Krohn, Trustee ("Trustee") by and through her counsel, Schwartzer & McPherson Law Firm, hereby files this Motion For Approval Of Settlement Agreement (the "Motion") requesting entry of an order approving the Settlement Agreement And Mutual Release ("Settlement Agreement"), attached hereto as **Exhibit 1**, pursuant to Fed. R. Bankr. P. 9019. This Motion is made and based upon 11 U.S.C. § 105(a), Fed. R. Bankr. P. 9019, Local Rule 9019, the Declaration of Shelley D. Krohn, the Points and Authorities set forth herein, the pleadings and papers on file in this case, and any oral argument entertained by the Court at the time of the hearing on this matter.

## INTRODUCTION

The Trustee, David Alessi ("Alessi"), Steven T. Loizzi ("Loizzi"), Ryan Kerbow ("Kerbow"), HOA Lawyers Group ("HOALG"), American Express Company ("AMEX Co.), and

SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

American Express National Bank successor by merger to American Express Bank, FSB and formerly known as American Express Centurion Bank ("AMEX NB") (AMEX Co. and AMEX NB collectively referred herein as "AMEX"), have entered into the Settlement Agreement to resolve all claims, issues, and matters between them. By this Motion, the Trustee seeks to have the Settlement Agreement approved by the Court as it complies with the factors articulated by the Ninth Circuit in *Martin v. Kane (In re A & C Properties)*, 784 F.2d 1377, 1380 (9th Cir. 1986), *cert. denied*, 479 U.S. 854 (1986) including: (1) the probability of success in the litigation; (2) the complexity of the litigation involved, and the expense, inconvenience, and delay necessarily attending it; (3) the difficulties, if any, to be encountered in the matter of collection; and (4) the interests of the creditors and a proper deference to their reasonable views in the premises. *Id*. at 1381 (citation omitted).

The Settlement Agreement[1] should be reviewed in its entirety. The Settlement Agreement resolves all claims asserted by the Trustee against Alessi, AMEX, HOALG, Kerbow, and Loizzi and its material terms are as follows:

1) Payment by Alessi in the amount of $660,000.00 to the Trustee;
2) Payment by AMEX in the amount of $35,000.00 to the Trustee;
3) Mutual releases of all parties including the Trustee, Alessi, AMEX, HOALG, Kerbow, and Loizzi; and
4) Dismissal, with prejudice, of the above captioned Avoidance Adversary.

## POINTS AND AUTHORITIES

### Factual Background

1. On December 13, 2016, Alessi & Koenig, LLC (the "Debtor") filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code ("A&K Bankruptcy Estate") in the United States Bankruptcy Court, District of Nevada (the "Bankruptcy Court"), initiating Case No. 16-16593-abl (the "Chapter 7 Bankruptcy Case"). The Trustee was duly appointed as the Chapter 7 Trustee.

2. On July 6, 2017, the Trustee filed an adversary complaint against 2010-1 CRE

[1] Unless otherwise defined herein, all capitalized terms have the meanings ascribed in the Settlement Agreement.

SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

Venture LLC, et al.,[2] in the Bankruptcy Court, Adversary Case No. 17-01210-abl (the "EP Adversary") interpleading two-million, nine-hundred twenty-four thousand, two-hundred fifteen and 37/100 US Dollars ($2,924,215.37), that the Debtor stated constituted proceeds left after it conducted foreclosure sales (the "Excess Proceeds"). The EP Adversary is pending and creditors have filed motions for disbursements from the Excess Proceeds.

3. On December 11, 2018, the Trustee filed an adversary complaint against Alessi, AMEX, and HOALG in the Chapter 7 Bankruptcy Case, Adversary No. 18-01129-abl (the "Avoidance Adversary"). In general, the Avoidance Adversary includes claims for breach of fiduciary duty and the avoidance of alleged fraudulent transfers of assets belonging to the A&K Bankruptcy Estate – including without limitation the transfer of assets to HOALG and the transfer by the Debtor of monies to AMEX for payment of the personal obligations of Alessi.

4. A summary of the key allegations in the Avoidance Adversary are as follows:

a. The Debtor was a law firm.

b. The members of the Debtor were David Alessi and Robert Koenig.

c. Alessi is an insider of the Debtor.

d. Alessi is not licensed to practice law in the State of Nevada.

e. Loizzi is an attorney licensed in the State of Nevada who was employed by the Debtor, or otherwise provided legal services on behalf of the Debtor.

f. The Debtor's assets included furniture, equipment, contracts, client lists, accounts, account receivables, and related property (the "Debtor's Assets").

**Lawyers Group, LLP**

g. The Debtor was the registered agent of Lawyer's Group, LLP ("LG").

h. LG also used the name HOA Lawyers Group.

i. Upon information and belief, Alessi held an interest in LG.

---

[2] The EP Adversary named numerous defendants that may or may not have claims to the Excess Proceeds.

j. LG opened an Interest on Lawyers Trust Account, account ending x5799 ("LGx5799") and Alessi was the only signatory.

k. Upon information and belief, some of the deposits in LGx5799 were checks made payable to the Debtor.

**HOA Lawyers Group, LLC**

i. In or around April 2016, Alessi and/or Loizzi formed HOALG.

j. Upon information and belief, HOALG operated as or was effectively the same entity as LG.

k. Under the HOALG Operating Agreement, Alessi holds a 75% interest in HOALG.

l. Under the HOALG Operating Agreement, Loizzi holds a 25% interest in HOALG.

m. The HOALG Operating Agreement provides that the "net profits or net losses of the Company [HOALG] shall be divided between Owners as follows: David Alessi- seventy-five percent (75%) and Steven Loizzi, Jr. - twenty-five percent (25%). Payout of the net profits will occur at the end of each fiscal year unless the Owners mutually agree to a different time."

n. The HOALG Operating Agreement provides that the "funds" of HOALG shall be deposited in its name and "[a]ll withdrawals therefrom are to be made upon checks signed by David Alessi or Steven Loizzi, Jr."

o. On or about April 20, 2016, the Debtor, through Alessi, and HOALG, through Loizzi, entered into a Retainer Agreement ("Retainer Agreement").

p. As set forth in the Retainer Agreement, HOALG was retained to represent the Debtor in connection with the dissolution of the Debtor.

q. Under the Retainer Agreement, HOALG's representation of the Debtor was effective as of April 20, 2016 and "will continue until HOALG completes the wind up of AK's existing business, AK fires HOALG, or the two

SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

years runs out."

r. Under the Retainer Agreement, HOALG was to provide the following services to the Debtor: substituting in and processing of all current Debtor files; substituting in and processing of all current Debtor interpleader cases; processing all excess proceeds claims resulting from any Debtor foreclosure sale (and "[f]ees resulting from the processing of said foreclosure sale files will be incurred and earned by HOALG"); and representation of former Debtor clients.

s. The Retainer Agreement provides that HOALG was not being retained to defend the Debtor in any lawsuits whatsoever, regardless of the cause of action.

t. The Retainer Agreement provides that HOALG is not charging the Debtor an "upfront, contingent, or hourly fee" for legal services, but "[i]nstead, AK [the Debtor] acknowledges that it no longer has any financial interests in the files being transferred to HOALG, and any and all fees and costs recovered by HOALG belong to HOALG unless or until AK [the Debtor] sells said files to a third party or AK files bankruptcy."

u. The Retainer Agreement provides that fees collected by HOALG at the conclusion of any Debtor collection file, Debtor interpleader action, or case where the Debtor represented a client other than itself, will be paid as follows:

·Fees and costs that were incurred by AK prior to the dissolution will be retained by HOALG to offset costs of winding down AK.

·Fees and costs that were incurred by HOALG after HOALG took over the collection and Interpleader files will also remain with HOALG.

v. In or around April 2016, the Debtor started transferring some of the Debtor's Assets to HOALG (the "HOALG Transfers").

w. Upon information and belief, some of HOALG's clients are the clients of the Debtor.

x. The Debtor provided, and HOALG provides, legal services that

SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

include the representation of homeowners' associations ("HOA(s)"), among other persons and parties.

y. Alessi is an insider of HOALG as he, among other things, is entitled to receive 75% of the net profit or losses of HOALG under the HOALG Operating Agreement.

**American Express Card**

z. The Debtor held and used a credit card from American Express ("American Express Card").

aa. Upon information and belief, from at least on or around December 2012 through December 2016, the Debtor transferred funds to pay for charges on the American Express Card that included some charges made by Alessi for his personal expenses (collectively, the "American Express Transfers"). Alessi maintains that he was given constructive distribution income for such personal expenses, such that he paid taxes on that money, and at a time when the Debtor was not insolvent.

**Excess Proceeds**

bb. The services provided by the Debtor to HOAs and others, included without limitation, collecting unpaid HOA fees owed by homeowners, initiating and noticing foreclosure proceedings, and conducting foreclosure proceedings on properties on behalf of HOAs ("Foreclosures").

cc. The Foreclosures that the Debtor conducted sometimes resulted in there being proceeds left over from the Foreclosures that needed to be distributed under applicable Nevada law, namely NRS 116.31164 (the "Excess Proceeds").

dd. The Trustee maintains that Excess Proceeds did not belong to the Debtor and the Defendants disagree.

ee. Upon information and belief, the Debtor placed some or all of the Excess Proceeds into the Debtor's Interest on Lawyers Trust Account ("IOLTA Account").

SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

ff. The Debtor's IOLTA Account was established to hold funds that did not belong to the Debtor but is typically a vehicle to maintain client monies.

gg. The Trustee contends that by placing the Excess Proceeds into the IOLTA Account at the time of the deposit of the Excess Proceeds, the Debtor believed that the Excess Proceeds did not belong to it.

hh. As a result of the existence of the Excess Proceeds, the Foreclosures, and the unknown and disputed legal effect of the Foreclosure on liens, deeds of trust, and other encumbrances and the distribution of the Excess Proceeds, among other things, the Debtor became involved as a party to hundreds of lawsuits, including without limitation interpleader actions, pending in federal and state courts in Nevada (the "Litigation").

ii. Upon information and belief, from 2012 to 2016, to be able to provide itself with the financial ability to pay for its financial obligations and those of Alessi and participate in or defend the Litigation, the Debtor transferred some of the Excess Proceeds to itself for its use and benefit (the "Appropriated Excess Proceeds").

jj. Upon information and belief, in or around 2016, some of the Excess Proceeds was transferred to HOALG and HOALG transferred some of the Excess Proceeds to itself for its use and benefit, which will also be referred herein as the Appropriated Excess Proceeds.

kk. Upon information and belief, the amount of the Appropriated Excess Proceeds is estimated to be in an amount in excess of $2,300,000 from the years 2012 to 2016.

ll. Upon information and belief, the transfer of the Appropriated Excess Proceeds was not authorized by those holding an interest in such funds.

mm. Upon information and belief, the Appropriated Excess Proceeds were transferred to the Debtor and HOALG to pay for various expenses of the Debtor and HOALG.

SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

nn. The Debtor, through Alessi, by transferring the Excess Proceeds to itself or to others created substantial claims by the true owners of the Appropriated Excess Proceeds against the Debtor causing loss to the Debtor.

oo. On the Petition Date, the Debtor and HOALG were still in possession of some of the Excess Proceeds ("Petition Excess Proceeds").

pp. The amount of the Petition Excess Proceeds as of the Petition Date was $2,924,215.37, which was comprised of $2,054,636.93 that was held by the Debtor and $869,578.44 that was held by HOALG.

qq. As of the Petition Date, the Debtor and HOALG indicated that they had paid themselves $806,048.76 from the amount of the Petition Excess Proceeds.

5. Based on these allegations, the Trustee alleged claims as follows: a) breach of fiduciary duty (with respect to Alessi only) alleging that Alessi is a fiduciary to the Debtor by virtue of his insider and membership position in the Debtor, that he owed the Debtor a fiduciary duty of loyalty, good faith, and due care, requiring him to maintain, in good faith, the Debtor's best interests over anyone else's interests, and that he breached his fiduciary duties, b) fraudulent transfer claims against HOALG and Alessi only including that the HOALG Transfers are avoidable pursuant to 11 U.S.C. §§ 544, 548(a)(1)(A) and (B), NRS 112.180(1)(a) and (b) and 112.210, and § 550, and c) fraudulent transfer claims against Alessi and AMEX including that the American Express Transfers are avoidable pursuant to 11 U.S.C. §§ 544, 548(a)(1)(B), NRS 112.180(1)(b) and 112.210, and § 550.

6. The Avoidance Adversary, to be clear, does not claim that the A&K Bankruptcy Estate is entitled to the Excess Proceeds, but does claim, among other things, that by using the Excess Proceeds, Alessi caused damage to the Debtor. Alessi disagrees, and asserts that the Excess Proceeds, under some theories, could be used by the Debtor and that the Debtor would have been insolvent long-before it filed for bankruptcy had it not used the Excess Proceeds to fund the litigation it became involved with.

7. On February 4, 2019, Alessi filed David Alessi's Motion To Dismiss Adversary Complaint [Adv. ECF 23] for failure to state a claim. This motion was granted with respect to Alessi,

SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

only, as to certain claims without prejudice but permitted the Trustee to file an amended complaint. [ECF 35].

8. Thereafter, the Trustee filed an amended complaint [Adv. ECF 41].

9. On July 19, 2019, Alessi filed David Alessi's Motion To Dismiss First Amended Adversary Complaint [Adv. ECF 52] for failure to state a claim. The parties have stipulated that this motion be continued as the parties to the Adversary Proceeding have been in negotiations and it remains pending.

10. The parties to the Adversary Proceeding attended a settlement conference with a settlement judge on August 9, 2019. The parties did not reach a settlement agreement at the settlement conference but came very close. Part of the problem with resolution at that settlement conference, is that the amount of unsecured claims was significantly overstated at approximately $25 million dollars. Through the efforts of Alessi, by objecting to claims, those amounts have been reduced by more than $20 million dollars, giving the parties a more accurate view of the creditor claims in this Chapter 7 Case.

11. The Trustee has maintained throughout this case that the Excess Proceeds are not property of the estate under 11 U.S.C. § 541. The Trustee has also maintained, however, that claims for damages for the unauthorized use of the Excess Proceeds are the property of the estate. As such, in the Avoidance Adversary, the Chapter 7 Trustee has claimed, among other things, that the use of the Excess Proceeds was a breach of fiduciary duty that caused damages to the Debtor and ultimately caused the Debtor's bankruptcy. In connection with the claims in the Avoidance Adversary, Alessi and Loizzi have contended that the Debtor was authorized to use the Excess Proceeds based on legal advice it obtained and theories of distribution under Nevada law that will be disputed if the parties are forced to litigate. The Trustee has asserted that this legal advice was not based on a proper application of the law, and that as a result, she also has claims against those persons who rendered this advice, Kerbow and Loizzi. In addition, the Trustee has asserted fraudulent transfer claims against HOALG and Alessi with regard to the transfer of the Debtor's assets to HOALG. Also, the Trustee has asserted fraudulent conveyance actions against AMEX and Alessi because, in general, the Debtor made unauthorized payments to AMEX for the personal debt of Alessi. Alessi contends

SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

that the amounts paid by the Debtor are far less than the Trustee contends, especially because much of what is alleged was treated as constructive income to Alessi at a time when the Debtor was not insolvent.

12. Putting aside the merits of the parties' legal arguments, given the nature of the claims in the Avoidance Adversary and related circumstances, determination of the amount of damages to the A&K Bankruptcy Estate will likely be difficult to determine, will be costly to establish as a result of attorneys' fees and costs (including without limitation expert fees and costs), and will cause significant delay in connection with the administration of this case. After working diligently, the parties have reached a comprehensive settlement agreement that will not only resolve the Avoidance Adversary, but will also address issues that must be resolved pertaining to the determination of the Proofs of Claim in the A&K Chapter 7 Bankruptcy Case, all of which will aid in a more timely administration of this case and distribution to allowed claim holders. Indeed, in connection with settlement negotiations, Alessi has worked on and completed the review of the filed proofs of claims ("Proofs of Claim") filed by certain claimants ("Claimants") in the A&K Chapter 7 Bankruptcy Case which originally totaled in excess of twenty-five million ($25,000,000). Alessi filed objections to many of these Proofs of Claim, and after determination of these objections, the Proofs of Claim currently total approximately $4,798,435.09. As such, the settlement amounts paid to the Trustee will go a lot farther than originally contemplated in large part to Alessi's efforts in reducing those claims by claim objection proceedings before this Court.

13. Under the Settlement Agreement, Alessi has agreed to pay the Trustee the sum of Six-Hundred Sixty-Thousand and 00/100 Dollars ($660,000.00)[3] and AMEX promises to pay to the Trustee, Thirty-Five Thousand and 00/100 Dollars ($35,000.00), for a total of Six-Hundred and Ninety-Five Thousand and 00/100 ($695,000.00) (collectively, the "Settlement Consideration") no later than fifteen (15) days after entry of a bankruptcy court order approving this Agreement under

[3] Loizzi agrees to pay to Alessi the sum of forty-thousand dollars ($40,000.00) after entry of the Non-Appealable Order, on a monthly basis, until paid in full.

SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

Fed.R.Bankr. P. 9019. Further, to the extent necessary, Alessi shall continue to review the Proofs of Claim on file, and Alessi shall continue to object to such claims as necessary (along with the claims in the EP Adversary). In addition, within ten (10) days from the date payment of the Settlement Consideration is made, the Trustee shall file a Stipulated Dismissal With Prejudice, dismissing the Avoidance Adversary, with prejudice. Lastly, a mutual release between all parties to the Adversary Proceeding, plus Kerbow and Loizzi, is being given.

**Memorandum of Law**

"On motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement." FED. R. BANKR. P. 9019(a). "The bankruptcy court has great latitude in approving compromise agreements." *Woodson v. Fireman's Fund Ins. Co. (In re Woodson)*, 839 F.2d 610, 620 (9th Cir. 1988). "The purpose of a compromise agreement is to allow the trustee and the creditors to avoid the expenses and burdens associated with litigating sharply contested and dubious claims." *In re A & C Properties*, 784 F.2d 1377, 1380 (9th Cir. 1986). Accordingly, in approving a settlement agreement, bankruptcy courts need not conduct a mini-trial on the merits of the claims, or an exhaustive investigation into the underlying dispute. *United States v. Alaska Nat'l Bank (In re Walsh Constr., Inc.)*, 669 F.2d 1325, 1328 (9th 1982). Rather, it is sufficient that the Court finds that the settlement was negotiated in good faith, and is reasonable, fair, and equitable. *In re A & C Props*., 784 F.2d at 1381.

The Ninth Circuit has identified the following factors for consideration in determining whether a proposed settlement agreement is reasonable, fair, and equitable:

a. The probability of success in the litigation;

b. The difficulties, if any, to be encountered in the matter of collection;

c. The complexity of the litigation involved, and the expense, inconvenience, and delay necessarily attending it; and

d. The paramount interests of the creditors and a proper deference to their reasonable views in the premises.

*In re A & C Props.*, 784 F.2d at 381 (citation omitted).

When considering these factors, courts need not decide the numerous questions of law and

SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

facts that may be raised regarding the settlement. *See, e.g.*, *Burton v. Ulrick (In re Schmitt)*, 215 B.R. 417, 423 (9th Cir. BAP 1997). Rather, the Court need only canvass the issues to determine whether the settlement falls "below the lowest point in the zone of reasonableness." *Newman v. Stein*, 464 F.2d 689, 698 (2d Cir. 1972); *In re Schmitt*, 215 B.R. at 423 ("[w]hen assessing a compromise, courts need not rule upon disputed facts and questions of law, but only canvass the issues"). "If the courts were required to do more than canvass the issue, there would be no point in compromising; the parties might as well go ahead and try the case." *Suter v. Goedert (In re Suter)*, 396 B.R. 535, 548 (D. Nev. 2008), quoting 10 Collier on Bankruptcy ¶ 9019.02. And while the Court should consider the reasonable views of creditors, "objections do not rule. It is well established that compromises are favored in bankruptcy." *In re Lee Way Holding Co.*, 120 B.R. 881, 891 (Bankr. S.D. Ohio 1990). Here, the Settlement Agreement represents a compromise that clearly falls within the reasonable range and is far above the "lowest point in the zone of reasonableness."

**A. <u>The Probability of Success in Litigation.</u>**

The Settlement Agreement involves the settlement of the Trustee's potential claims against Alessi, AMEX, and HOALG set forth in the Avoidance Adversary. These claims are for breach of fiduciary duty[4] and the avoidance of alleged fraudulent transfers of assets belonging to the bankruptcy estate, including without limitation the transfer of the Debtor's assets to HOALG and the Debtor's transfer of monies to AMEX to pay the personal obligations of Alessi.

With regard to the claims for breach of fiduciary duty against Alessi, including the use of Excess Proceeds damaging the Debtor, Alessi disputes these claims, arguing that Alessi obtained legal advice which provided authority for the Debtor to use the Excess Proceeds for its own fees and expenses. The Trustee does not believe there is adequate support for Alessi's defenses and thus believes she has a good probability of success on these claims. On the other hand, Alessi, HOALG, Loizzi and Kerbow have maintained that the plain language of the statute governing this dispute

---

[4] To be clear, the claims in the Avoidance Adversary do not assert that the bankruptcy estate is entitled to the Excess Proceeds, but does claim, among other things, that by using the Excess Proceeds, Alessi caused damage to the Debtor.

SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

makes them the party likely to prevail, citing to similar authority in California. If an adverse ruling were to occur against the Defendants, an appeal to the Nevada Supreme Court would likely follow.

With regard to the avoidable transfer claims against HOALG and Alessi, the Debtor transferred its assets to HOALG and the Trustee believes the Debtor did not receive reasonably equivalent value in exchange for the transfers. HOALG and Alessi allege that HOALG was winding down the business of the Debtor and thus provided value to the Debtor. The Trustee does not believe that HOALG's and Alessi's defenses would be successful and believes that she has a good chance of success in prevailing on these claims. On the other hand, HOALG and Alessi believe they would likely prevail as the parties did exchange reasonably equivalent value.

With regard to the avoidable transfer claims against AMEX and Alessi, the Debtor made payments to AMEX and the Trustee believes that the Debtor did not receive reasonably equivalent value for the transfers because payment was made for the personal expenses of Alessi. Alessi argues, among other things, that the payments to AMEX were for expenses owed by the Debtor. Alessi also argues that of the AMEX payments that were made for personal expenses, those amounts were treated as constructive income to Alessi which would defeat a fraudulent transfer claim so long as the Debtor was solvent during those transactions. AMEX alleges that it was not the recipient of fraudulent transfers because, among other things, AMEX provided value and it is entitled to payment for the value provided. The Trustee believes that the defenses of AMEX and Alessi may be successful and therefore believes that settlement is warranted here.

Considering the strength of the claims and the defendants' defenses, the Trustee believes she would have a fair chance of success in prevailing on some of the claims she has alleged, but not necessarily all of them considering the defenses of Alessi, HOALG and AMEX. Thus, this *A&C Properties* factor is neutral at best but weighs in favor of settlement as a result.

**B. <u>The Complexity, Inconvenience, and Expense of Litigation.</u>**

The Trustee believes that the litigation against Alessi, HOALG, and AMEX would be fairly complex, inconvenient, and expensive. With regard to the claims for breach of fiduciary duty, the Trustee would need to conduct extensive discovery regarding the facts and circumstances pertaining to Alessi's conduct and actions taken in connection with the use of the Excess Proceeds. The

SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

necessary analysis would be extensive and time consuming. With regard to the claims pertaining to the transfers made to HOALG, the Trustee would need to establish the value of the Debtor's assets that were transferred requiring the retention of an expert valuation witness. Further, with regard to the claims pertaining to the transfers made to AMEX on behalf of the Debtor, the Trustee believes that significant expense would arise in connection with the amount of time needed to properly assess each of the numerous transfers, their nature, and whether Alessi's constructive income defenses to each have merit. Significant disputes could erupt over whether a charge to the AMEX was personal, or business related, resulting in additional costly litigation.

In addition to the complexity of the claims and attendant time-consuming nature of such claims, the Trustee anticipates that there would be significant expense to the estate. Multiple experts would likely need to be retained to establish the breach of fiduciary claim and the fraudulent transfer claims. There are no funds in this estate to pay experts. Moreover, the estate would incur substantial, additional attorneys' fees and costs and reduce any potential recovery. Thus, the Trustee believes this litigation is financially burdensome. Accordingly, this *A&C Properties* factor weighs heavily in favor of approving the Settlement Agreement.

**C. <u>Difficulty of Collection.</u>**

The Trustee believes that collection would be time consuming and potentially unproductive. With regard to Alessi, the Trustee has reason to believe that collection against Alessi might be difficult as Alessi might have difficulty paying a large personal judgment and that his assets might be shielded from collection because they are in entities or trusts. With regard to HOALG, the Trustee believes that collection might be difficult due to HOALG's lack of revenue to pay a judgment. In addition, the Trustee believes that HOALG likely has few available assets to pay a judgment, as the assets transferred to HOALG by the Debtor were not, relatively, of a significant amount. With respect to the remaining individual settling parties in the Settlement Agreement, Loizzi and Kerbow, they are without significant assets or income to make collection worthwhile. It would potentially cost more to the estate to collect against these individuals, than what the Trustee could collect ultimately. With regard to AMEX, the Trustee believes that collection may prove time consuming and therefore costly given that collection may have to occur outside of the immediate

SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

jurisdiction. On balance, these considerations weigh in favor of approval of the Settlement Agreement.

**D. <u>The Settlement Agreement Is in the Best Interest of Creditors.</u>**

The paramount interests of the creditors and a proper deference to their reasonable views weigh heavily in favor of approving the Settlement Agreement. The Trustee has considered the nature of the claims, the probability of success on these claims, the expense and time likely to be incurred, the defenses of Alessi, HOALG, and AMEX and their strengths, and the potential recovery on all of the claims the Trustee has asserted. Considering these factors, the Trustee believes that this settlement is in the best interest of creditors. The Trustee believes that this Settlement Agreement allows the estate to receive a good and fair amount for the claims and in a timely and efficient manner, without bearing the risk of losing on these claims and incurring additional, significant attorneys' fees and costs, including the costs of experts. Further, the estate is administratively insolvent and thus the Trustee's ability to litigate such claims to judgment would be difficult, at best. Finally, as a result of the efforts of Alessi, the unsecured claims in this estate were reduced from $25 million to less than $5 million dollars. Considering the time that creditors have been forced to wait for their distribution, and the considerable amount that is being paid into the estate for payment on account of these claims, the time is ripe for settlement and distribution. Thus, this *A & C Properties* factor weighs heavily in favor of approval of the Settlement Agreement.

**CONCLUSION**

Considering and balancing each of the *A&C Properties* factors, the Trustee believes that the weight of these factors weighs in favor of approval of the Settlement Agreement. As such, the Trustee respectfully requests that the Court enter an order approving the Settlement Agreement and authorizing the Trustee to enter into any agreements and documents necessary to effectuate the Settlement Agreement.

Dated: October 19, 2020.

<u>/s/ Jeanette E. McPherson</u>
Jeanette E. McPherson, Esq.
Schwartzer & McPherson Law Firm
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
*Attorneys for Shelley D. Krohn, Trustee*

# EXHIBIT 1

# SETTLEMENT AGREEMENT AND MUTUAL RELEASE

This Settlement Agreement and Mutual Release (the "Agreement") is made and entered into this _____ day of August, 2020 (the "Effective Date") by and between David Alessi ("Alessi"), Steven Loizzi, Jr. ("Loizzi"), Ryan Kerbow ("Kerbow"), HOA Lawyers Group ("HOALG"), American Express Company ("AMEX Co.), and American Express National Bank successor by merger to American Express Bank, FSB and formerly known as American Express Centurion Bank ("AMEX NB") (AMEX Co. and AMEX NB collectively referred herein as "AMEX"), and Shelley D. Krohn in her capacity as Chapter 7 Trustee of the Alessi & Koenig LLC bankruptcy estate ("Trustee"). Alessi, Loizzi, Kerbow, HOALG, and AMEX may each be referred to as a "Party" or collectively as the ("Parties").

## RECITALS

A. This Agreement arises out of disputes between and/or among the above referenced Parties regarding transfers made and damages from the use of Excess Proceeds, as defined below.

B. On December 13, 2016, Alessi & Koenig (the "Debtor") filed for relief under Chapter 7 of the Bankruptcy Code ("A&K Bankruptcy Estate") in the United States Bankruptcy Court, District of Nevada (the "Bankruptcy Court"), initiating Case No. 16-16593-abl (the "A&K Chapter 7 Bankruptcy Case"). The Trustee was duly appointed as the Chapter 7 Trustee.

C. On July 6, 2017, Trustee filed an adversary complaint against 2010-1 CRE Venture LLC, et al.,[1] in the Bankruptcy Court, Adversary Case No. 17-01210-abl (the "EP Adversary") interpleading monies, two-million, nine-hundred twenty-four thousand, two-hundred fifteen and 37/100 US Dollars ($2,924,215.37), that the Debtor stated constituted proceeds left after it conducted foreclosure sales (the "Excess Proceeds"). The EP Adversary is pending and parties have filed motions for disbursements from the Excess Proceeds, some of which have been granted.

D. On December 11, 2018, the Trustee filed an adversary complaint against Alessi, AMEX, and HOALG in the A&K Chapter 7 Bankruptcy Case, Adversary No. 18-01129-abl (the "Avoidance Adversary"), for breach of fiduciary duty and, in general, the avoidance of alleged fraudulent transfers of assets belonging to the A&K Bankruptcy Estate – including without limitation the transfer of assets to HOALG and the transfer by the Debtor of monies for payment of the personal obligations of Alessi. The Avoidance Adversary does not claim that the A&K Bankruptcy Estate is entitled to the Excess Proceeds, but does claim, among other things, that by using the Excess Proceeds, Alessi caused damage to the Debtor.

E. In the A&K Chapter 7 Bankruptcy Case, certain claimants ("Claimants") filed proofs of claim ("Proofs of Claim") totaling in excess of twenty-five million ($25,000,000). Alessi filed objections to many of these Proofs of Claim, and after determination of these objections the Proofs of Claim currently total approximately $4,798,435.09.

---

[1] The EP Adversary named numerous defendants that may or may not have claims to the Excess Proceeds.

SK

F. The Trustee has maintained throughout the A&K Chapter 7 Bankruptcy Case that the Excess Proceeds are not property of the A&K Bankruptcy Estate under 11 U.S.C. § 541. The Trustee has also maintained, however, that claims for damages for the unauthorized use of the Excess Proceeds are the property of the A&K Bankruptcy Estate. In fact, in the Avoidance Adversary, the Chapter 7 Trustee has claimed, among other things, that the use of the Excess Proceeds was a breach of fiduciary duty that caused damages to the Debtor and ultimately caused the A&K Chapter 7 Bankruptcy Case. In connection with the claims in the Avoidance Adversary, Alessi and Loizzi have contended that the Debtor was authorized to use Excess Proceeds. The Trustee, however, has alleged that the Debtor received legal advice that was not based on a proper application of the law and also has claims against those persons who rendered this advice. Putting aside the merits of these legal arguments, given the nature of the claims in the Avoidance Adversary and related circumstances, determination of the amount of damages to the A&K Bankruptcy Estate will probably be difficult to determine, will be costly to establish as a result of attorneys' fees and costs (including without limitation expert fees and costs), and will cause significant delay.

G. After working diligently, the Parties have reached a comprehensive settlement Agreement that will not only resolve the Avoidance Adversary, but will also address issues that must be resolved pertaining to the determination of the Proofs of Claim in the A&K Chapter 7 Bankruptcy Case, all of which will aid in a more timely administration of this case and distribution to allowed claim holders. In fact, as part of this settlement, Alessi reviewed and objected to the Proofs of Claim (along with a review of the claims in the EP Adversary), which review necessarily included Proofs of Claim related to the EP Adversary and their payment from Excess Proceeds.

H. The Parties desire to settle and resolve all disputes and claims between the Parties rather than incur additional costs and attorneys' fees, and in addition, by way of this Agreement, work to resolve broader issues impacting the timely administration of this case as set forth immediately above. By entering into this Agreement, no Party acknowledges liability for the alleged claims and no Party shall be deemed a prevailing party under the Agreement, governing statutes, or otherwise. The Parties shall bear their own costs of expenses in the respective litigation filed against the other Party.

I. In order to resolve this dispute, the Parties wish to make a full, complete, and final settlement with respect to the above recitals and all known and unknown claims arising therefrom.

NOW, THEREFORE, in consideration of the mutual promises, conditions, and agreements contained herein, and other good and valuable consideration, the receipt and sufficiency of which the Parties acknowledge, the Parties incorporate the above recitals by this reference and, intending to be legally bound, agree as follows:

## AGREEMENT

1. Recitals. The Parties hereby stipulate and agree that the foregoing recitals are true and correct in all respects and are incorporated herein by this reference, with AMEX relying on the representations of the other Parties in accepting the foregoing recitals as true and correct for the purposes of this Agreement.

2. Effective Date. Except as otherwise provided herein, this Agreement shall become effective upon the date (the "Effective Date") written above, but the parties understand and acknowledge that this Agreement is subject to Bankruptcy Court approval.

3. Settlement Terms.

(a) As consideration for entering into this Agreement, Alessi promises to pay to the order of Shelley D. Krohn, Chapter 7 Trustee, the sum of Six-Hundred Sixty-Thousand and 00/100 Dollars ($660,000.00)[2] by wire transfer, or other certified funds, no later than fifteen (15) days after entry of a bankruptcy court order approving this Agreement under Federal Rule of Bankruptcy Procedure ("Fed. R. Civ. P.") 9019 (the "Non-appealable Order), and AMEX agrees to pay to "Shelley D. Krohn, Chapter 7 Trustee" (the "Payee") the sum of Thirty-Five Thousand and 00/100 Dollars ($35,000) (the "AMEX Settlement Payment") by wire transfer within thirty (30) days of AMEX's counsel's receipt of (i) the fully executed Agreement, (ii) an IRS Form W-9 completed by the Payee; and (iii) an Electronic Deposit Authorization Form, which is attached hereto as Exhibit B, completed by the Payee, for a total of Six-Hundred and Ninety-Five Thousand and 00/100 ($695,000) (collectively, the "Settlement Consideration")..

(b) The Trustee shall file with the Bankruptcy Court, and set for a hearing, a Motion for Approval of this Agreement pursuant to Fed. R. Bankr. P. 9019, no later than five (5) business days from the Effective Date of this Agreement.

(c) Alessi shall continue to review the Proofs of Claim on file, and Alessi shall continue to object to such claims as necessary (along with the claims in the EP Adversary) on or before September 15, 2020.

(d) Within ten (10) days from the date payment of the Settlement Consideration is made, the Chapter 7 Trustee shall file a Stipulated Dismissal With Prejudice, in the form attached hereto as **Exhibit A**, dismissing the Avoidance Adversary, with prejudice.

(e) If the Trustee receives the AMEX Settlement Payment prior to the Bankruptcy Court's approval of this Agreement, the Trustee shall hold the AMEX Settlement Payment in trust pending the entry of a final order by the Bankruptcy Court approving the Agreement or, if there is an appeal, until entry of a final order with respect to the appeal. In the event that the Bankruptcy Court does not approve this Agreement or there is a final, non-appealable order of an appellate court reversing an order of the Bankruptcy Court approving this Agreement, (i) the Trustee shall promptly return the AMEX Settlement Payment to AMEX, and (ii) this Agreement shall be null and void with the Parties returning to their original respective positions with no rights waived.

4. Releases.

(a) Except as otherwise set forth in this Agreement, effective upon the payment in wire transfer or certified funds of the Settlement Consideration, and approval of this Agreement by the Bankruptcy Court, each Party to the Avoidance Adversary plus Loizzi and Ryan Kerbow, including each of their affiliates (for AMEX, including without limitation American Express

[2] Loizzi agrees to pay to Alessi the sum of forty-thousand dollars ($40,000) after entry of the Non-Appealable Order, on a monthly basis, until paid in full.

Travel Related Services Company, Inc. "AETRS"), shareholders, officers, directors, members, managers, attorneys and related parties (each as a "Releasing Party") hereby releases relinquishes, and discharges the other Party, plus Loizzi and Ryan Kerbow, including each of their affiliates (for AMEX, including without limitation AETRS), shareholders, officers, directors, members, managers, attorneys, and related parties (each as a "Released Party") from any and all claims, demands, actions, causes of action, losses, costs, expenses, damages, liabilities, liens or obligations of any character, in law or equity, contract or tort, whether known or unknown, fixed or contingent, accrued or not yet accrued, matured or not yet matured, vested or not yet vested (collectively, "Released Claims"), which the Releasing Party has against the Released Party to the extent such Released Claims directly relate to, arise out of, or are any way connected with the A&K Chapter 7 Bankruptcy Case, including without limitation, any claims under Chapter 5 of the Bankruptcy Code or comparable state statutes, or any of the allegations asserted in the Avoidance Adversary, EP Adversary, or Released Claims relating to the Excess Proceeds. Nothing herein is intended to relieve the Parties from their obligations under this Agreement which may be enforced as set forth below; provided, however, that while this release by AMEX for itself and its affiliates includes a release of Alessi for the AMEX Settlement Payment, it does not otherwise extend to: (i) any contractual obligations (including charges on credit or charge cards) by any entity or individual other than the Debtor; or (ii) any claims by AMEX or its affiliates that have been timely filed or scheduled in the A&K Chapter 7 Bankruptcy Case.

(b) Each Releasing Party acknowledges that he/she/it may later discover claims or facts in addition to or different from those which that Party now knows or believes to exist with respect to the Released Claims and the subject matter of this Agreement, and which if known or suspected at the time of executing this Agreement, may have materially affected its terms. Having been so apprised, each Releasing Party elects to and does assume all risks for any and all claims, whether known or unknown, suspected or not suspected, arising from or related to the subject matter of this Agreement, including but not limited to the Released Claims, and knowingly and voluntarily releases the Released Party from any and all liability and claims arising out of or related to such matters.

5. Non-Disparagement. The Parties and their respective officers, corporate directors, and senior executives will not defame or disparage the other Parties. This provision also applies to any comments or statements which any of the foregoing individuals may make on the Internet, including but not limited to comments, statements and/or videos placed in email, and/or on YouTube, Facebook, Twitter, Instagram or any other social media site or application. The Parties further agree not to defame or disparage any other Party to this Agreement, or their businesses, services or projects, or make or solicit any comments, statements or the like to the media or others that may be considered to be derogatory or harmful to the good name or business reputation of any of the Parties hereto. For the avoidance of doubt, this provision does not affect any Party's obligations to provide testimony or information in any official capacity or proceeding.

6. Independent Counsel. The Parties represent and warrant that they have been advised that they should be represented by counsel of their own choosing in the preparation and analysis of this Agreement, that they have been represented by their own independent counsel and that they have read this Agreement and believe that they are fully aware of and understand the contents hereof and the legal effect. The Parties further represent and warrant that they have entered into this Agreement voluntarily and with the approval and advice of their counsel.

7. Attorneys' Fees. In the event of any litigation among the Parties, including any appeals, in connection with or arising out of this Agreement, the prevailing Party shall recover all of its costs and expenses, including expert fees, and reasonable attorneys' fees actually incurred which shall be determined and fixed by the court as part of the judgment. The Parties covenant and agree that they intend by this section for the prevailing Party to recover for such reasonable attorneys' fees as the court may determine were actually and necessarily incurred by the prevailing Party.

8. Representations and Warranties. Each Party hereby represents and warrants to the other Parties as follows: Each Party represents and warrants that (i) the execution of this Agreement by such Party has been duly approved and authorized by all necessary company, partnership or corporate action, as applicable; (ii) the person executing the Agreement on behalf of such Party is duly authorized to execute this Agreement; (iii) upon the execution and delivery of this Agreement by such person, this Agreement shall be binding upon such Party; (iv) no Party has assigned their rights under this Agreement; and (v) no other approvals or consents are necessary in connection with the execution and delivery of this Agreement by such Party. This Agreement has been duly executed and delivered by each Party and constitutes a legal, valid and binding obligation of the Parties and this Agreement constitutes a legal, valid and binding obligation of the Parties, is enforceable against each Party in accordance with its terms.

9. Time of the Esence. Time is of the essence of this Agreement, and in all the terms, provisions, covenants and conditions hereof.

10. Miscellaneous.

(a) No Admissions. The Parties intend that neither anything contained in this Agreement, nor any Party's performance of its obligations to the same, shall be deemed to be an admission or acknowledgment of liability, the existence of damages, or the amount of any damages relating to any part of the subject matter of this Agreement.

(b) Applicable Law and Venue. This Agreement shall, in all respects, be governed by the laws of the State of Nevada applicable to agreements executed and any action or proceeding filed, instituted or initiated to enforce, construe, or challenge this Agreement or any of the terms contained herein may only be filed or initiated in the United States Bankruptcy Court, District of Nevada. The Parties hereby submit themselves exclusively to the jurisdiction of the courts of the State of Nevada and waive any defense to venue that could otherwise be asserted therein.

(d) Further Assurances. Each of the Parties shall execute and deliver any and all additional papers, documents and other assurances, and shall do any and all acts and things reasonably necessary in connection with the performance of their obligations hereunder to carry out the intent of the Parties.

(e) Modifications or Amendments. No amendment, change or modification of this Agreement shall be valid, unless in writing and signed by all of the Parties.

(f) Successors and Assigns. All of the terms and provisions contained herein shall inure to the benefit of and shall be binding upon the Parties and their respective heirs, legal representatives, successors and assigns.

(g) Entire Agreement. This Agreement constitutes the entire understanding and agreement of the Parties with respect to its subject matter and any and all prior agreements, understanding or representations with respect to its subject matter are hereby terminated and canceled in their entirety and are of no further force or effect.

(h) Non-Waiver. No waiver by any Party hereto of a breach of any provision of this Agreement shall constitute a waiver of any preceding or succeeding breach of the same or any other provision hereof.

(i) Counterparts. This Agreement may be executed in counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

(j) Number and Gender. In this Agreement, the masculine, feminine or neuter gender, and the singular or plural number, shall each be deemed to include the others whenever the context so requires.

(k) Captions and Headings. The captions and headings appearing at the commencement of the sections hereof are descriptive only and for convenience in reference.

(l) Expenses. Except as otherwise set forth above, the Parties shall pay all of their own costs and expenses in connection with this Agreement, including, but not limited to, legal fees, accounting fees, and any other costs and expenses incurred or to be incurred by it or them in negotiating and preparing this Agreement.

(m) Interpretation. This Agreement is the result of negotiations among the Parties who have each negotiated and reviewed its terms. No Party shall be deemed to be the drafter for purposes of interpreting any ambiguity or uncertainty in this Agreement against that Party.

IN WITNESS WHEREOF, the Parties hereto have executed this Settlement Agreement on the dates set forth adjacent to their names.

| DAVID ALESSI, an individual | STEVEN LOIZZI Jr., an individual |
|---|---|
| Signed:______________________________ | Signed:___/s/ Steven Louizzi Jr.____ |
| Date: ______________________________ | Date: ______________________________ |

HOA LAWYERS GROUP, a Nevada limited liability company,

Signed:____________________________

Name Printed:________________________

Title:______________________________

Date: ______________________________

AMERICAN EXPRESS COMPANY, a New York corporation,

Signed: Matthew Heimann

Name Printed: Matthew Heimann

Title: Manager & Counsel

Date: October 5, 2020

SHELLEY D. KROHN, in her capacity as CHAPTER 7 TRUSTEE of the ALESSI & KOENING LLC BANKRUPTCY ESTATE

Signed: Shelley Krohn

Date: 10/5/2020

AMERICAN EXPRESS NATIONAL BANK successor by merger to AMERICAN EXPRESS BANK, FSB, a national bank,

Signed: Matthew Heimann

Name Printed: Matthew Heimann

Title: Manager & Counsel

Date: October 5, 2020

RYAN KERBOW

Signed: __________________________

Date: ____________________________

HOA LAWYERS GROUP, a Nevada limited liability company,

Signed: Troy Fox

Name Printed: Troy S. Fox

Title: Attorney for HOA Lawyers Group

Date: 10-5-2020

AMERICAN EXPRESS COMPANY, a New York corporation,

Signed: Matthew Heimann

Name Printed: Matthew Heimann

Title: Manager & Counsel

Date: October 5, 2020

SHELLEY D. KROHN, in her capacity as CHAPTER 7 TRUSTEE of the ALESSI & KOENING LLC BANKRUPTCY ESTATE

Signed: ______________________________

Date: ______________________________

AMERICAN EXPRESS NATIONAL BANK successor by merger to AMERICAN EXPRESS BANK, FSB, a national bank,

Signed: Matthew Heimann

Name Printed: Matthew Heimann

Title: Manager & Counsel

Date: October 5, 2020

RYAN KERBOW

Signed: ___________________________

Date: ____________________________

(j) Number and Gender. In this Agreement, the masculine, feminine or neuter gender, and the singular or plural number, shall each be deemed to include the others whenever the context so requires.

(k) Captions and Headings. The captions and headings appearing at the commencement of the sections hereof are descriptive only and for convenience in reference.

(l) Expenses. Except as otherwise set forth above, the Parties shall pay all of their own costs and expenses in connection with this Agreement, including, but not limited to, legal fees, accounting fees, and any other costs and expenses incurred or to be incurred by it or them in negotiating and preparing this Agreement.

(m) Interpretation. This Agreement is the result of negotiations among the Parties who have each negotiated and reviewed its terms. No Party shall be deemed to be the drafter for purposes of interpreting any ambiguity or uncertainty in this Agreement against that Party.

IN WITNESS WHEREOF, the Parties hereto have executed this Settlement Agreement on the dates set forth adjacent to their names.

| | |
|---|---|
| DAVID ALESSI, an individual<br>Signed: [signature]<br>Date: 10-3-20 | STEVEN LOIZZI, an individual<br>Signed:________<br>Date: ________ |
| HOA LAWYERS GROUP, a Nevada limited liability company,<br>Signed:________<br>Name Printed:________<br>Title:________<br>Date: ________ | AMERICAN EXPRESS COMPANY, a New York corporation,<br>Signed:________<br>Name Printed:________<br>Title:________<br>Date: ________ |
| SHELLEY D. KROHN, in her capacity as CHAPTER 7 TRUSTEE of the ALESSI & KOENING LLC BANKRUPTCY ESTATE<br>Signed:________<br>Date: ________ | AMERICAN EXPRESS NATIONAL BANK successor by merger to AMERICAN EXPRESS BANK, FSB, a national bank,<br>Signed:________<br>Name Printed:________<br>Title:________<br>Date: ________ |
| | |

RYAN KERBOW

Signed: [signature]

Date: 10/5/2020

15368455v2

# EXHIBIT A

Jeanette E. McPherson, Esq., NV Bar No. 5423
Schwartzer & McPherson Law Firm
2850 South Jones Blvd., Suite 1
Las Vegas NV 89146-5308
Telephone: (702) 228-7590
Facsimile: (702) 892-0122
E-Mail: bkfilings@s-mlaw.com

*Attorneys for Shelley D. Krohn, Trustee*

SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

**UNITED STATES BANKRUPTCY COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| In re:<br><br>ALESSI & KOENIG, LLC,<br><br>Debtor. | Case No. BK-S-16-16593-ABL<br><br>Chapter 7<br><br>Adv. No. 18-01129-ABL |
| SHELLEY D. KROHN, TRUSTEE,<br><br>Plaintiff<br><br>v.<br><br>DAVID ALESSI; AMERICAN EXPRESS COMPANY; AMERICAN EXPRESS NATIONAL BANK successor by merger to AMERICAN EXPRESS BANK, FSB; HOA LAWYERS GROUP, LLC; DOES I through 10 inclusive, ROE ENTITIES I through 10 inclusive,<br><br>Defendants. | **STIPULATION OF DISMISSAL WITH PREJUDICE**<br><br>Hearing Date: N/A<br>Hearing Time: N/A |

Shelley D. Krohn, Chapter 7 Trustee (the "Trustee"),[1] by and through her counsel Schwartzer & McPherson Law Firm, David Alessi, by and through his counsel McDonald Carano LLP, American Express Company and American Express National Bank, by and through their counsel Carlyon Cica Chtd., Steven T. Loizzi, Ryan Kerbow, and HOA Lawyer's Group, LLC, by and through its counsel Crosby & Fox, LLC (collectively, the "Parties") hereby stipulate and agree that based upon the entry of an order approving the Settlement Agreement And Mutual Release

[1] Unless otherwise defined herein, all capitalized terms have the meanings ascribed them in the underlying documents.

entered on ________________, 2020 and payment of the Settlement Consideration, this adversary proceeding is hereby dismissed with prejudice.

Dated: __________, 2020.

/s/ Jeanette E. McPherson
Jeanette E. McPherson, Esq.
Schwartzer & McPherson Law Firm
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146
*Attorneys for Shelley D. Krohn, Trustee*

Dated: __________, 2020.

*/s/ Troy S. Fox*
Troy S. Fox, Esq.
Crosby & Fox, LLC
710 South 8th Street
Las Vegas, Nevada 89101
*Attorneys for HOA Lawyer's Group*

Dated: ___________, 2020.

*/s/ Dawn M. Cica*
Candace C. Carlyon, Esq.
Dawn M. Cica, Esq.
Tracy M. O'Steen, Esq.
Carlyon Cica Chtd.
4495 S. Pecos Road
Las Vegas, Nevada 89121
*Attorneys for American Express National Bank and American Express Company*

Dated: ____________, 2020.

*/s/ Ryan J. Works*
Ryan J. Works, Esq.
Amanda Perach, Esq.
McDonald Carano, LLP
2300 W. Sahara Avenue, Suite 1200
Las Vegas, NV 89102
*Attorneys for David Alessi*

Dated: ____________, 2020.

_________________________
Steven T. Loizzi

Dated: ____________, 2020.

_________________________
Ryan Kerbow

SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

# EXHIBIT B

ELECTRONIC DEPOSIT AUTHORIZATION FORM

Name: ______________________________

Address: ______________________________

City: ______________ State / Country: ______________ Zip / Postal Code: __________

Contact Person: ______________________ Phone #: (      ) ______________

Title / Position: ______________________________

E-mail Address: ______________________________

Fax#: (      ) ______________ Tax ID # / SS # ______________

**Receiving Bank / Account Details:**

Account Name: ______________________________

Financial Institution: ______________________________

Financial Institution Address: ______________________________

City: ______________ State / Country: ______________ Zip / Postal Code: __________

*Account #: ______________ *SORT CODE: ______________

*ABA Routing Number (U. S. only): ______________ *BSB (Australia only): ______________

*SWIFT CODE: ______________ *IBAN: ______________

***Please verify the above account and routing numbers with your Financial Institution to ensure accuracy.**

AUTHORIZATION: ______________________ ______________
(Authorized signature only) NAME (PLEASE PRINT) TITLE

______________________ ______________
SIGNATURE DATE

EXHIBIT "A"